IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| GPI AVIATION, INC. | * | |
|     Debtor | * | |
| | * | |
| GPI AVIATION, INC. | * | CASE NO. 1-05-bk-06047MDF |
|     Plaintiff | * | |
| | * | |
| vs. | * | ADV. NO. 1-07-ap-00071 |
| | * | |
| VAUGHN STALLER and | * | |
| JOHN WALTER | * | |
|     Defendants | * | |

## OPINION

### Procedural and Factual History

Before me is a request for an injunction prohibiting two unsecured creditors, Vaughn Staller and John Walter ("Defendants"), from pursuing an action in state court against William Gettig ("Gettig"), the principal of GPI Aviation, Inc. ("Debtor"). Defendants' state court suit seeks reimbursement of pre-petition claims against Debtor that Gettig personally guaranteed. The facts relevant to this proceeding are not in dispute.

Defendants are pilots formerly employed by Debtor. Defendants allege, and Debtor does not dispute, that Gettig agreed to reimburse Defendants for travel expenses they incurred in furtherance of their employment with Debtor. Defendant Staller has a claim against Debtor's estate in the amount of $16,000.00. Defendant Walter has a claim in the amount of $21,000.00.

Debtor's confirmed chapter 11 plan provides that each Defendant will be paid $4,925.00 as a Class 4 priority wage claim.[1] The priority portion of their claims will be paid over three

---

[1]Pursuant to the terms of 11 U.S.C. § 507(a)(4) as they existed on the date Debtor's petition was filed, September 9, 2005, priority claims for employee wages, salaries or commission were limited to this amount.

years, commencing at the end of the first quarter after the Plan Effective Date. (Debtor's Amended Consolidated Chapter 11 Plan, p. 28, ¶ 7.4).[2] The balances on Defendants' claims for reimbursement of expenses will be treated as general unsecured claims in Class 7; however, the precise treatment of these claims is unclear. The plan provides that "Class 7 claims will be paid up to the amount of $2,000,000.00 over 84 months with interest at 4% after the Plan Effective Date." The plan also provides that "general unsecured creditors will be paid approximately 100% over 8 years." After providing for stepped up payments that Debtor will make to the plan disbursement agent commencing December 1, 2008, the first distribution to Class 7 will be made three months after the first payment is made to the disbursing agent. (Debtor's Amended Consolidated Chapter 11 Plan, p. 30, ¶ 7.7). Therefore, it appears that the first payment to Class 7 will not be made until approximately March 1, 2009. Defendants Staller and Walter will not be paid at that time, however, because the plan also provides that the disbursing agent will first pay claims under $1,000.[3] Accordingly, it is impossible to determine when Debtor will commence payment on the general unsecured portion of Defendants' claims.

Prior to the petition date, Defendants filed a joint action in state court naming both Debtor and Gettig as defendants and seeking reimbursement of the above-described travel expense claims. This action was stayed on September 9, 2005 when Debtor, three related companies and Gettig filed petitions for bankruptcy relief. Gettig voluntarily dismissed his individual case on November 16, 2006 as a condition to obtaining financing to pay off the

---

[2]The Court calculates that the Plan Effective Date is May 16, 2008.

[3]Payments to Class 7 are further hedged by a provision that permits Debtors to "suspend" payments when gross receipts are less than $325,000.00.

2

primary secured creditors of the corporate entities – M & T Bank and Omega Bank. In the instant adversary, Debtor seeks to enjoin Defendants from resuming their state court action against Gettig.

The parties have agreed to submit the case for decision on briefs.[4]

## Discussion

Upon the filing of a bankruptcy petition, a stay arises by operation of law pursuant to 11 U.S.C. § 362(a). Although the effect of the stay is broad, by its express terms, the stay imposed by § 362(a) applies only to the debtor. *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982). As a consequence, "[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir. 1991) (quoting *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196-97 (6th Cir.1983)). Courts have extended the automatic stay to non-debtor defendants only in "unusual circumstances," which are found when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3d Cir. 1997) (quoting *A.H. Robbins Co., Inc. V. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S. Ct. 251

---

[4]I have core jurisdiction to hear this matter pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052.

3

(1986)). Courts have also extended the stay to non-debtor third parties where stay protection is essential to the debtor's efforts to reorganize. *Id.* (citations omitted.)

The source of a bankruptcy court's power to provide injunctive relief to third parties is found in the court's equity jurisdiction under 11 U.S.C. § 105(a). Section 105(a) provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Most courts considering the question have held that bankruptcy courts have the power to enjoin legal proceedings brought by a debtor's creditors against non-debtor third parties under § 105(a). *In re Monroe Well Service, Inc.* 67 B.R. 746, 751 (Bankr. E.D. Pa.,1986).[5] Injunctive relief is appropriate when there is "an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate*." In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004) *(*citing *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002)).

---

[5]The cases contain numerous examples of injunctions issued under section 105 to prohibit chapter 11 creditors from proceeding in another court against a debtor's principal(s) because the proceeding would adversely affect the reorganization. *In re Northlake Building Partners*, 41 B.R. 231 (Bankr. N.D. Ill. 1984) (holding that because partnership was reorganizing, injunctive relief was proper to prevent creditors from proceeding against general partners individually); *Matter of St. Petersburg Hotel Associates, LTD*., 37 B.R. 380 (Bankr. M.D. Fla. 1984) (holding that injunction was appropriate to prevent creditors from proceeding with action against non-debtor general partner on latter's guarantee); *In Re Ms. Kipps, Inc*., 34 B.R. 91 (Bankr. S.D. N.Y. 1983) (enjoining action against debtor's president to recover employee benefit contributions because of potential adverse affect on president's ability to manage debtor's reorganization); *Matter of Old Orchard Investment Co.*, 31 B.R. 599 (W.D. Mich. 1983) (enjoining creditor from instituting collection proceeding against individual partners of bankrupt partnership); *In Re Otero Mills*, *Inc.*, 21 B.R. 645 (Bankr. N.M.), aff'd, 25 B.R. 1018 (D. N.M. 1982) (enjoining creditor from proceeding against debtor's president and shareholder as guarantor of the debtor's corporate obligations).

4

Case 1:07-ap-00071-MDF    Doc 15    Filed 05/09/08    Entered 05/12/08 08:55:01    Desc
Main Document    Page 4 of 9

In *Monroe Well Service,* Judge Fox set forth the following oft-cited criteria for determining the propriety of enjoining a state court action initiated by a creditor against a non-debtor.

> The first requirement is that there be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests.

*Monroe Well Service*, 67 B.R. at 752-53 (citation omitted). *See also In re Labrum & Doak, LLP,* 237 B.R. 275, 305-06 (Bankr. E.D. Pa. 1999); *In re Olympia Holding Corp.*, 161 B.R. 524, 528 (M.D. Fla. 1993); *In re Stadium Management Corp.*, 95 B.R. 264, 268 (D. Mass. 1988); *In re Costa & Head Land Co.*, 68 B.R. 296, 298 (N.D. Ala. 1986); *In re Delaware River Stevedores, Inc.*, 129 B.R. 38, 42 (Bankr. E.D. Pa. 1991).[6] I will apply the *Monroe Well Service* criteria to determine whether an injunction is appropriate in the instant case.

*a. Danger of imminent, irreparable harm to the estate or to debtor's ability to reorganize*

Debtor asserts that Defendants' state court suit will distract Gettig from his responsibilities of managing Debtor and the three related debtor companies and may "create a

---

[6] Other courts have been less specific in their criteria for an injunction against a state court proceeding. "[T]o enjoin a creditor from proceeding with a state court action against a non-debtor, the court must find that failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third party." *In re Sondra, Inc.*, 44 B.R. 205, 207 (Bankr. E.D. Pa. 1984) (citing *Otero Mills*, 21 B.R. at 778; *In re Sentinel Energy Control Systems, Inc.*, 27 B.R. 795, 800 (Bankr. D. Mass. 1983); *In re Lahman Mfg. Co.*, Inc., 33 B.R. 681, 682-83 (Bankr. D. S.D. 1983); *Matter of Precision Colors, Inc.*, 36 B.R. 429, 431 (Bankr. S.D. Ohio 1984); *In re Century Machine Tools, Inc.*, 33 B.R. 606, 607 (Bankr. S.D. Fla. 1983); *Mahaffey v. E-C-P of Arizona, Inc.*, 40 B.R. 469, 471-72 (D. C.D. Colo. 1984).

5

drain" on Gettig's personal resources. If Gettig is required to pay what essentially are corporate obligations, Debtor argues that Gettig's ability to use his personal credit to fund Debtor's operations will be hampered and payment under the plan may be impaired. Although Debtor's plan provides that payments into the plan will be paid from Debtor's operations, it does provide that Gettig may advance funds if necessary. Debtor argues that Gettig needs to address his full attention to implementing the confirmed plan and should not be forced to defend claims that are addressed in the plan. Debtor also asserts that it would be adversely affected by a judgment against Gettig, who would have a claim for reimbursement against Debtor. Each of Debtor's contentions has some merit although they are mitigated in part by the relatively small amount of the claims and by Gettig's apparent concession as to liability. However, Defendants do not deny that the confirmed plan relies, at least in part, on Gettig's ability to obtain credit for the reorganization, and that a lawsuit against him would generally have a negative impact on his ability to obtain credit on favorable terms.[7] Defendants also do not dispute that Gettig would be able to demand indemnification from Debtor for any amounts he was required to pay to Defendants. Debtor has not made an exceptionally strong showing on this factor, but clearly there is a significant danger that if the injunction is not granted, Debtor's reorganization will be hampered.

---

[7]Defendants do point out that impairment of a corporate principal's credit rating may not, alone, justify an injunction against a suit against that principal. *See In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 367 (Bankr. D. Mass. 2005) (citing *Apollo Molded Product, Inc. v. Kleinman,* 83 B.R. 189 (Bankr. D. Mass. 1988)). However, as discussed *infra*, impairment to Gettig's credit-worthiness is not Debtor's sole argument in this case.

*b. Reasonable likelihood of a successful reorganization*

Debtor's plan was confirmed on November 7, 2007 without objection by Defendants to the proposed payment of their claims. One post-confirmation quarterly report has been filed, but it only covered operations for one month. The quarterly report for the period ending March 31, 2008 has not been filed, nor was it due when briefs were submitted. It is undisputed that Gettig committed significant personal assets to satisfy the claims of two major secured creditors to insure confirmation of Debtor's plan. Without further evidence, it would be inappropriate to conclude at this juncture that the plan does not have a reasonable likelihood of success.

*c. Relative harm as between the debtor and the creditor who would be restrained*

As discussed above, there is a serious potential for harm to Debtor and its reorganization efforts if I refuse to restrain Defendants' state court action. Defendants correctly indicate that the cases that grant an injunction to stop state court actions against a debtor's principal frequently are granted in the early stages of a chapter 11 case, often before a plan is confirmed or even proposed. Clearly, this case is not in its initial stage. However, this fact alone does not compel denial of the motion, because the efforts required to implement a plan are equally important to the success of a reorganization as the efforts necessary to formulate a plan. Gettig is the principal and sole shareholder of all four corporate debtors, and his participation continues to be important to the reorganization effort.

Debtor argues that an injunction will not harm Defendants in any event because the confirmed plan "provides for 100% payment to the defendants over 3 years." (Debtor's Brief, p. 9). Debtor's assertion misrepresents the treatment of Defendants' claims. As noted above, only the priority portion of Defendants' claim will be paid in the three year period following the first

7

quarter after the Plan Effective Date. The remainder of their claims *may* be paid 100% over *eight* years, depending on numerous contingencies.

Within a few months, the Court will be able to determine whether Debtor is able to make good on this promise. Certainly the delay in payment to the Defendants is significant. Although the record does not address this issue, most individuals saddled with credit card claims of $21,00.00 or $16,000.00 would be burdened significantly by these unpaid debts. The Court does not minimize this hardship. However, the Court finds that it is preferable to encourage the implementation of the orderly process envisioned in the plan rather than to open the door to numerous suits against Debtor's principal outside the bankruptcy process.

To mitigate the hardship imposed upon Defendants, § 105(a) allows the Court to fashion a remedy tailored to the needs of the parties and the equities of the case.

> Under the equitable analysis implicated by § 105(a), to establish the propriety of a collection injunction, the debtor must prove that it is necessary to allow the debtor to successfully reorganize and to perform the terms of the Chapter 11 plan. The injunction must also be tailored in duration and scope to afford the necessary relief to the debtor while not placing unnecessary restrictions on the target creditor's rights. . . . In addition, the injunction should be effective only as long as the debtor is properly performing and complying with the terms of the plan. If the debtor fails to make plan payments or engages in conduct that unfairly frustrates the rights of the creditor to collect its claim (e.g. by improperly conveying away assets), the creditor should be allowed relief from the collection injunction.

*In re Brotby*, 303 B.R. 177, 190 (B.A.P. 9th Cir. 2003). The injunction can be limited in duration so that Defendants' rights will be protected if the plan does not proceed apace.

  *d. The public interest*

Debtor notes that if I allow Defendants' state court suit to proceed, it would enable these two parties to obtain payment on their claims against Debtor sooner than other creditors in their

8

class (Class 7). Debtor acknowledges that if Gettig is required to satisfy Defendants' claims, payment will not be made directly from estate assets, but Debtor nonetheless argues that the bankruptcy goal of equal treatment of similarly situated creditors will be defeated. Debtor's argument has been rejected in at least one other case. "If accepted, the debtor's reasoning would essentially result in precluding unsecured creditors from pursuing all state court actions against non-debtors where the non-debtors are allegedly liable for part or all of a debt owed by a debtor, even if the state court action in no way harmed the debtor or the debtor's bankruptcy estate." *In re Sondra*, 44 B.R. at 207. I also reject Debtor's policy argument as overly broad.

Despite these infirmities in Debtor's arguments, however, I find that a properly tailored injunction in this case will serve the public interest. Defendants' brief does not point out any particular societal interest in Defendants' personal recovery in state court that outweighs the public interest in the successful reorganization of four corporate entities providing employment opportunities to the broader community. Therefore, I conclude that the issuance of a temporary injunction is appropriate.

An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: May 9, 2008

*This document is electronically signed and filed on the same date.*